CLAUDE NEON ELECTRICAL PRODUCTS CORPORATION, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75685. Promulgated March 5, 1937.

*Frank Mergenthaler, Esq.*, for the petitioner.
*I. N. Tullar, Esq.*, for the respondent.

564

OPINION.

MURDOCK: The petitioner is a Delaware corporation. It owned at all times material hereto all of the outstanding stock of the Electric Products Corporation, a California corporation, referred to in the stipulation as the California Corporation. Epco was organized on October 27, 1930. At all times during its corporate existence its out-standing capital stock was owned by the California Corporation. The income of Epco and of the California Corporation for 1931 was in-cluded in the consolidated income tax return filed by the petitioner for the year 1931. The principal activities of Epco consisted of the purchase of the petitioner's common stock and the resale of that stock. During 1930 it sold the stock only to employees of the affili-ated companies without attempting to make a profit on the sales. During that year it purchased 5,005 shares from the California Cor-poration and 201 shares from the petitioner, and sold 4,721 shares to employees. This left 485 shares which it carried on its books at the beginning of 1931 at cost. It purchased, during 1931, 3,060 shares from the California Corporation, and received 100 shares as a stock dividend. It acquired by purchase from other sources dur-ing the year, 1,275 shares. It sold during the year, 124 shares to employees of the affiliated companies, 500 through brokers, and 1,152 directly to the public. Sales of 569 shares to employees were can-celed during the year, as were sales of 215 shares to the public. Thus Epco at the close of 1931 had on hand 3,928 shares of the common stock of the petitioner. Epco realized a profit of $4,162.38 from the sale of the stock of the petitioner in 1931. The fair market value of the 3,928 shares which it had on hand at the close of 1931 was $27,496 less than the cost to it of those shares. The foregoing is a partial summary of the stipulated facts.

The statute provides that inventories shall be taken whenever, in the opinion of the Commissioner, their use is necessary in order to determine clearly the income of a taxpayer. Sec. 22 (c), Revenue Act of 1928. The Commissioner promulgated Regulations 74, con-taining article 105 relating to inventories by dealers in securities and providing that a dealer in securities who in his books of account regu-larly inventories unsold securities on hand in one of the three ap-proved methods may make his return upon the basis used in his accounts. It defines a dealer as a merchant of securities with an established place of business regularly engaged in the purchase of securities and their resale to customers with a view to the gains and profits that may be derived therefrom. This has been held to be a proper regulation. The stipulation of facts and the additional evi-dence show that Epco at the close of 1931 was a merchant of the

common stock of the petitioner, with an established place of business, and was regularly engaged in the purchase of those securities and their resale to customers with a view to the gains and profits that might be derived therefrom. Thus it was a dealer within the definition of that term contained in the Commissioner's regulations. In its books of account, beginning 1931, it regularly inventoried all of the unsold common stock of the petitioner which it had on hand. Its method of inventorying was at cost or market, whichever was lower. That was one of the three methods approved by the regulations. Therefore, under the statute and the regulations promulgated by the Commissioner, Epco had a right to make its return for 1931 upon the basis used in its accounts, that is, upon the basis of inventorying at market, which was lower than cost, its holdings of unsold common stock of the petitioner.

The Commissioner argues, in support of his action denying the use of inventories to Epco, that the statute placed an important discretionary power in him relating to the use of inventories and his determination carries great weight. The statute did indeed give the Commissioner a great deal of authority and discretion in regard to the use of inventories, but, having promulgated a regulation of general application, the Commissioner can not deny its effect to one taxpayer which comes within its provisions. The respondent contends further that Epco did not meet the requirements laid down by article 105, since it did not regularly inventory unsold securities, did not inventory all securities by the same method, and was not consistent in the method used although it did not obtain permission of the Commissioner to change its method. He says Epco did not regularly inventory its unsold securities because it had no opening inventory for the year 1930 at cost or market, whichever was lower. However, the evidence shows that Epco became a dealer during the year 1931 and was not a dealer during 1930 or at the beginning of 1931. Thus it had no right to use a closing inventory for 1930 or to use an opening inventory at market for 1931. It had a right to carry its securities at cost at that time. A taxpayer beginning business as a dealer in any year takes up its securities at cost and uses for the first time an inventory at market at the close of the first year. The case of Epco is no different. Since this is so, and since Epco used the inventory method at the close of 1931, which was the first time it was entitled to use that method, it was not offending that part of the regulations which provides that the inventory method must be adhered to in subsequent years unless another be authorized by the Commissioner. Beginning with the closing inventory of 1931, Epco regularly inventoried the common stock of the petitioner. Epco at the close of 1931 owned, in addition to the common stock of the petitioner, 70 shares

of the preferred stock of the petitioner. It did not inventory the preferred shares and does not claim the right to inventory them. The Commissioner argues that this is in violation of the regulation that all securities must be inventoried by the same method. The regulation, however, means only that all securities in which the taxpayer is a dealer must be inventoried by the same method and recognizes that a dealer may have other securities which need not be inventoried. The evidence shows that Epco met the requirements for the use of inventories. The Commissioner acted contrary to his own regulations in denying to Epco the use of a closing inventory for the year 1931.

The final argument made by the Commissioner in his brief is that Epco was not a dealer entitled to the use of inventories because its only activity and primary function was the distribution of the common stock of its parent. He finds no specific support for this argument in his regulations, but cites as his only authority the case of *Berks County Trust Co.* v. *Commissioner*, 78 Fed. (2d) 810, in which the court quoted with approval the following statement made by the Board Member from the bench at the close of the hearing:

One who undertakes as the agency of a project to exploit the securities of that project and nothing else, who does not buy and sell securities, qua securities, but who undertakes only to sell the securities of a particular project, of one company, is not within the language of the regulations and was not within the intention of the statute.

The facts in that case were that William A. Sharp, with an associate, organized a corporation to build a hotel on ground to be sold to the hotel by Sharp. The two promoters subscribed for all of the preferred stock. The hotel was built and first and second mortgages in the total amount of $1,700,000 placed on it. The two associates bought some of the second mortgage bonds and agreed to sell the balance of the second mortgage bonds, amounting to $400,000. The portion of these which Sharp was unable to sell, he purchased solely for the purpose of sale and not as an investment. He maintained an office during 1930 for the purpose of selling these bonds, and devoted most of his time to that work. He employed a salesman and sold $45,000 worth of the bonds during 1930. In his return for that year he deducted the difference between the market value of the bonds as of January 1, 1930, and the market value thereof on December 31, 1930, claiming that he was a dealer in securities. The court held that in view of the facts of the particular case, Sharp was not a dealer in securities as contemplated by the regulations. The compass of that decision should not be expanded to embrace the present case, where the facts are different. It does not appear that Epco was used during 1931 primarily to exploit the securities of its parent as opposed to buying and selling the stock as stock. It purchased a substantial

part of the stock which it had for sale from outside sources and the evidence as a whole indicates that it was not used by its parent merely as an agency for the distribution of the stock. On the contrary, the evidence indicates that its principal function was to earn a profit. Furthermore, the Commissioner has placed such limitations upon the use of inventories as he, in the exercise of his discretion, has deemed proper and sufficient. The Board will not further narrow the use of inventories by prescribing additional limitations sufficient to deny the use of inventories to Epco.

Reviewed by the Board.

*Decision will be entered under Rule 50.*